October 23, 1979

## 79-77　MEMORANDUM OPINION FOR THE ACTING ASSOCIATE ATTORNEY GENERAL

### Small Business Administration and Community Services Administration—Eligibility of Community Development Corporations for Participation in Certain Government Procurement Programs (15 U.S.C. § 637(a), 42 U.S.C. § 2985a)

This responds to your request for our opinion with respect to a question of statutory construction as to which there is disagreement between the Small Business Administration (SBA) and the Community Services Administration (CSA). The question is whether community development corporations (CDCs), which are financed by CSA, may participate in SBA's program to increase the use of small businesses as Government procurement contractors. The issue arises because of an apparent conflict between the legislation governing SBA and that governing CSA's activities.[1] For the reasons that follow, it is our opinion that the two statutes can be satisfactorily reconciled in a manner that gives effect to Congress' intent to allow CDCs to participate in these SBA programs.

The statutes in question are § 742(a)(2) of the Economic Opportunity Act, as amended, 42 U.S.C. § 2985a(a)(2), and § 8(a) of the Small Business Act, as amended, 15 U.S.C. § 637(a). In order to participate in SBA's so-called "§ 8(a)" program, which is designed to assure that a greater share of Government procurement contracts are awarded to small businesses, an

---

[1] We understand that this issue is presently involved in litigation being handled by the Civil Division. *Delta Foundation, Inc., et al.* v. *Weaver, et al.*, Civ. No. 79-1662 (D.D.C.). In that case, Electro National Corp., the wholly owned subsidiary of a CDC (Delta Foundation, Inc.), has claimed the right to participate in the SBA small business procurement program. We have been informed that apart from the question of the statutory propriety of the corporation's participation because it is owned by a CDC, there is no other factor that would bar the corporation from participation.

applicant must be "socially and economically disadvantaged." 15 U.S.C. § 637(a)(1)(C). Such a concern is one

    (A)    which is at least 51 per centum owned by one or more socially and economically disadvantaged individuals; or in the case of any publicly owned business, at least 51 per centum of the stock of which is owned by one or more socially and economically disadvantaged individuals; and

    (B)    whose management and daily business operations are controlled by one or more of such individuals. [15 U.S.C. § 637(a)(4).]

This is the definition adopted by Congress in the SBA amendments of October 24, 1978. By its terms, the definition is focused on directing assistance to individuals; this theme is confirmed in the legislative history of the SBA amendments.[2]

Several days after the passage of the SBA amendments, Congress passed amendments to the Economic Opportunity Act. In an amendment to § 742(a)(2), approved November 2, 1978, Congress stated:

> Within 90 days * * * the Administrator of the Small Business Administration, after consultation with the Director [of the CSA], shall promulgate regulations to insure the availability to community development corporations of * * * programs under § 8(a) of the Small Business Act. [42 U.S.C. § 2985a(a).]

The legislative history of this provision emphasizes the mandatory nature of the Small Business Administrator's responsibility to make available § 8(a) programs to CDCs. For example, the Senate report states:

> Although the 1972 amendments to the Economic Opportunity Act specified that the Small Business Administration should prescribe such regulations as were necessary and appropriate to insure the availability of Small Business Administration (SBA) programs to CDC's, SBA has failed to issue any regulations and has refused, either directly or indirectly, to make its programs available to community development corporation enterprises.
>
> The 1972 amendments were intended "to lead to the issuance of guidelines that will maximize the availability of SBA programs to CDC's receiving financial assistance under the title VII program."
>
> S. 2090 would revise the 1972 language to mandate that the SBA "promulgate regulations to insure the availability to community development corporations of such programs as shall further the purposes of this title, including programs under section 8(a) of the Small Business Act." SBA regulations enabling CDC's to participate in the procurement preference minority set aside

---

[2] *See, e.g.,* S. Rept. 1070, 95th Cong., 2d sess. 25 (1978); H. Conf. Rept. 1714, 95th Cong., 2d sess. 20–21 (1978).

program, should be issued immediately. [S. Rept. 892, 95th Cong., 2d sess. 25 (1978); quotation concerning legislative intent from S. Rept. 792, 92d Cong., 2d sess. 40 (1972).]

The amendment was further explained in the Senate report as limiting SBA's discretion: "[l]anguage which indicated 'as may be necessary and appropriate' was deleted because it was cited by SBA as a reason for not issuing regulations." *Id.* at 38. Congress, in enacting this provision anticipated action by the SBA alone to make the § 8(a) program available to CDCs:

> The amendment which establishes eligibility for Community Development Corporations (CDC) for the Small Business Administration Section 8(a) set-aside program will not require CSA modification of its existing regulations and has little, if any, CSA regulatory impact. The amendment will, however, have a substantial favorable economic impact on the approximately fifty CDCs presently funded by CSA, since CDCs will be eligible for the first time to participate in the federal procurement set-aside program. [*Id.* at 29.]

In the light of the clear direction to the SBA contained in § 742(a)(2) and confirmed by the legislative history, there is little room for an argument that the SBA is unable to allow CDC participation in § 8(a) programs. To the extent that there is an argument it rests on the notion that a CDC (or wholly owned affiliate of a CDC) is by definition not an organization "owned" by individuals as required by the definition for "socially and economically disadvantaged" organizations set forth above. A CDC is either "a nonprofit organization responsible to residents of the area it serves which is receiving financial assistance under part A of this subchapter [VII]," or is "any organization more than 50 per centum of which is owned by such an organization, or otherwise controlled by such an organization, or designated by such an organization for the purpose of this subchapter." 42 U.S.C. § 2981a.

The individual ownership requirement of § 8(a) cannot be read to exclude CDCs from participation in the program. Congress must be presumed to know that CDCs by definition are not more than 51 percent individually owned, yet it mandated their participation. Section 742 must, therefore, be read to include control by the same individuals as the SBA Act is intended to benefit.[3]

This interpretation is compelled by the legislative history and does not render either statute ineffective. *Cf.*, *Morton* v. *Mancari*, 417 U.S. 535,

---

[3]The CSA makes the argument that ownership insofar as it means title cannot be fractionalized since one may either have absolute title or may share title in an undivided fashion, as in joint tenancy or tenancy in common. The CSA thus takes the position that the phrase "51 per centum owned" must mean a corporate or contractual arrangement under which 51 percent control resides in socially and economically disadvantaged individuals. We need not decide whether, in all cases, this is a reasonable interpretation of the term "ownership" as used in § 8(a).

551 (1974). CDCs assist in the development of similar businesses conducted by similar people as does the SBA § 8(a) program. Furthermore, the 51 percent rule in the SBA Act was intended particularly to get at the quite different problem of use of eligible disadvantaged individuals as "fronts" to obtain assistance for otherwise ineligible businesses. S. Rept. 95-1070, 95th Cong., 2d sess. 16 (1978).

The Small Business Administrator, pursuant to § 742(a)(2), has the obligation to confer with the Director of CSA and to prescribe regulations to effectuate these legal conclusions and thus to insure the availability to CDCs of § 8(a) programs. This must be done expeditiously, as the time period for compliance specified in the statute has already passed.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*